**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PETER KILCHENSTEIN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. EA-24-3070 |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

On October 22, 2024, Plaintiff Peter Kilchenstein initiated the above-captioned action in which he asserts a single negligence claim against Defendant United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* ECF No. 1. Pending before the Court are the United States' motions to exclude expert testimony and for partial summary judgment, each of which is fully briefed. ECF Nos. 38, 41, 43; ECF Nos. 39–40, 44. No hearing is necessary. Local Rule 105.6 (D. Md. Dec. 1, 2025). For the reasons set forth below, both motions are granted.

**I.    BACKGROUND**

**A.    Relevant Allegations and Procedural History**

This case arises from an automobile collision that occurred on April 27, 2023, on Interstate 95 in Prince George's County, Maryland, involving a United States Postal Service (USPS) vehicle. ECF No. 1 ¶¶ 5–6. Mr. Kilchenstein alleges that the USPS employee operating the USPS vehicle negligently failed to keep proper control of the vehicle, failed to look out for other vehicles, failed to yield the right of way, and changed lanes when it was unsafe to do so, all of which proximately caused a collision with the vehicle in which Mr. Kilchenstein was a passenger. *Id.* at ¶ 8. Mr. Kilchenstein avers that on September 15, 2023, he filed an administrative claim with the USPS. ECF Nos. 1 ¶ 3; 39-1; *see also* 28 U.S.C. § 2672. In his

administrative claim, Mr. Kilchenstein identified his injuries as affecting his head, right shoulder, right elbow, back, and neck and claimed $500,000 in personal injury damages and $10,000 in property damages.[1]  ECF No. 39-1 at 1.[2]  Mr. Kilchenstein contends that the USPS did not enter a final disposition of his claim within six months of the filing and therefore his claim is deemed to have been denied.  ECF No. 1 ¶ 3; *see also* 28 U.S.C. § 2675(a).  Having exhausted his administrative remedies, Mr. Kilchenstein initiated this action seeking $510,000 in damages for "great pain and injury, mental anguish, and . . . medical expenses."  ECF No. 1 ¶¶ 3, 9.

In his June 6, 2025 answers to interrogatories, Mr. Kilchenstein identified the medical evaluations and treatment he received following the motor vehicle accident.  ECF No. 39-2 at 5.  Among other medical providers, Mr. Kilchenstein identified Abraham Mathew, MD.  *Id.*  He did not identify Mohammed Alwahaidy, MD.  *Id.*  On June 30, 2025, Mr. Kilchenstein identified five individuals in his Rule 26(a)(2) expert witness disclosures: (1) Thomas C. Borzilleri; (2) Michael S. Borzilleri; (3) Clara Kim, MD; (4) Erin Moberly, PT, DPT; and (5) Dr. Mathew.  ECF No. 38-9.  In this disclosure, Mr. Kilchenstein indicated that Dr. Mathew would testify as to treatment rendered and Mr. Kilchenstein's "diagnosis, prognosis, causation of injury, permanency, [ ] fairness and reasonableness of bills, and any costs of future medical treatment."  *Id.* at 2.  Mr. Kilchenstein did not identify Dr. Alwahaidy as an expert in this Rule 26(a)(2) disclosure.  ECF No. 38-9.  Discovery closed on October 20, 2025.  ECF No. 17.

---

[1]  The United States asserts that Mr. Kilchenstein appended a series of medical records and bills to his administrative claim, none of which documented treatment from Mohammed Alwahaidy, MD.  ECF No. 39 at 2 & n.1.

[2]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document, except that page numbers of exhibits that are deposition transcripts refer to the page and line number of the deposition transcript.

On December 23, 2025, the Court denied Mr. Kilchenstein's motion to amend his complaint to increase the amount of recoverable damages beyond what he had identified in his administrative claim based on his asserted claim that he suffered additional economic losses by being "forced to retire five years earlier than planned." ECF No. 29 at 2 (quoting ECF No. 22-1 at 2); *Kilchenstein* v. *United States*, Civil Action No. EA-24-3070, 2025 WL 3713725, at *1 (D. Md. Dec. 23, 2025). On January 29, 2026, the Court held a pretrial scheduling conference and scheduled a bench trial to begin on May 19, 2026. ECF Nos. 32–33.

On February 5, 2026, the United States notified the Court of its intention to move to exclude the expert testimony of Dr. Mathew and seek partial summary judgment. ECF No. 34. That same day, Mr. Kilchenstein identified Dr. Alwahaidy as an additional expert in the field of neurology. ECF No. 39-4 at 2. Mr. Kilchenstein's amended Rule 26(a)(2) disclosure indicates that Dr. Alwahaidy will testify as to the treatment he provided to Mr. Kilchenstein, as well as Mr. Kilchenstein's diagnosis, prognosis, causation of injury, permanency, and fairness and reasonableness of bills, and any cost of future medical treatment.[3] *Id.*

## B.      Relevant Factual Background

Mr. Kilchenstein testified at his deposition that he was the passenger in a full-size pickup truck when it was struck on the passenger side by a tractor-trailer. ECF No. 38-1 at 17:8–18. Mr. Kilchenstein's vehicle "hit the guardrail and then started barrel rolling, tumbling many times," and ultimately "came to a gradual stop . . . right side up." *Id.* at 18:2–3, 8–11. First responders cut the doors open and removed Mr. Kilchenstein and the driver from the pickup truck. *Id.* at 20:7–12. Mr. Kilchenstein was examined in an ambulance on-scene following the accident but was not transported directly to the hospital from the accident. *Id.* at 20:14–18, 21–23. Instead,

---

[3] The areas of testimony Mr. Kilchenstein identified for each expert witness in his initial and amended Federal Rule of Civil Procedure 26(a)(2) disclosures are identical. ECF Nos. 38-9; 39-4.

his wife drove him to the hospital later that same day.  *Id.* at 20:23–21:1.  Mr. Kilchenstein testified that he went to the hospital because he was experiencing "more noticeable pain and discomfort . . . from the accident."  *Id.* at 28:3–4.

At the hospital, Mr. Kilchenstein was examined by Dr. Kim, who told him that he would be "very sore" from the accident.  *Id.* at 28:25–29:9; *see also id.* at 30:23–31:1 ("I just remember them saying they didn't find any significant injuries but . . . I would be very sore from what I went through.").  Carroll Hospital medical records reflect that following examination and testing on April 27, 2023, Dr. Kim noted that she had "low concern for significant trauma at this time." ECF No. 38-2 at 4.  Mr. Kilchenstein was prescribed a "short supply of cyclobenzaprine"[4] and was discharged with instructions to follow up with his primary care physician.  *Id.* at 5.

Medical records reflect that Mr. Kilchenstein was seen by Dr. Mathew on May 2, 2023, at which time Mr. Kilchenstein reported pain in his lumbar spine and neck, the severity of which he evaluated as a three on a ten-point scale.  ECF No. 38-3 at 8.  Dr. Mathew advised Mr. Kilchenstein "that there was no hint of a dangerous problem and that rapid recovery was expected."  *Id.* at 11; *see also* ECF No. 38-4 at 16:23–17:3.  Dr. Mathew recommended that Mr. Kilchenstein pursue physical therapy.  ECF Nos. 38-3 at 11; 38-4 at 16:21–22.  Medical records document that Mr. Kilchenstein again consulted with Dr. Mathew on June 2, 2023, at which time Mr. Kilchenstein reported that he was undergoing physical therapy, experienced about a 60 percent improvement, and wanted to continue with that treatment.  ECF Nos. 38-3 at 4; 38-4 at 18:15–18.  Mr. Kilchenstein saw Dr. Mathew again on August 11, 2023, at which time he was discharged from physical therapy because he was "doing 99 percent better."  ECF No. 38-3 at 1 (all caps removed); *see also* ECF No. 83-4 at 19:24–20:4.

---

[4] "Cyclobenzaprine" is "a skeletal muscle relaxant administered . . . to relieve muscle spasms and pain."  "Cyclobenzaprine." Merriam-Webster.com Medical Dictionary, Merriam-Webster, https://perma.cc/X82P-PZQW (last visited March 30, 2026).

Dr. Mathew testified at his deposition that he has worked in the field of general primary medicine since 1998, and that he is eligible to be board certified in the area of family practice. ECF No. 38-4 at 9:6–16, 22:7–11.  He further testified that Mr. Kilchenstein has been his patient since July 2011 (*id.* at 12:5–7), and that Mr. Kilchenstein had "pre-existing chronic back pain prior to [the] accident" at issue in this action (*id.* at 12:18–20).  Dr. Mathew did not know the precise cause of Mr. Kilchenstein's pre-existing chronic back pain or how long it had been ongoing.  *Id.* at 25:9–17.  Dr. Mathew could only say that Mr. Kilchenstein's back pain started around 2022 (*id.* at 26:21–22) and that on November 21, 2022, he referred Mr. Kilchenstein to a neurosurgeon to be evaluated for neck pain (*id.* at 25:17–23).

In connection with the April 27, 2023 accident, Dr. Mathew examined Mr. Kilchenstein on May 2, 2023; June 2, 2023; and August 11, 2023.  *Id.* at 12:12–14, 13:16–21, 18:2–6, 19:16–18, 20:24–21:4, 22:17–20.  Dr. Mathew testified that at the May 2, 2023 consultation, Mr. Kilchenstein reported pain in his "lower back and neck."  *Id.* at 14:7–10.  Mr. Kilchenstein described the severity of this pain as a "three out of ten."  *Id.* at 14:19–20.  Dr. Mathew found that Mr. Kilchenstein had "normal symmetry, tone, strength, and range of motion" (*id.* at 16:10–11) and recommended that Mr. Kilchenstein take over-the-counter pain relief medicine (*id.* at 17:11–12) and pursue physical therapy (*id.* at 16:21–22).  Dr. Mathew testified at the June 2, 2023 consultation that Mr. Kilchenstein "personally told [him] that there was superb improvement in the pain," which he described as "about 60 percent."  *Id.* at 18:11–18.  Dr. Mathew recommended that Mr. Kilchenstein continue with physical therapy (*id.* at 18:13–14) and take over-the-counter pain medicine (*id.* at 19:1–2).  Dr. Mathew testified that at the August 11, 2023 consultation, Mr. Kilchenstein told him that he was "99 percent better."  *Id.* at 19:24–20:4.  Dr. Mathew explained that Mr. Kilchenstein had "recovered pretty much fully well from the [physical therapy] and didn't have much of any pain, and with his permission, [Dr. Mathew]

discharged him from [the motor vehicle accident] case." *Id.* at 20:8–13. After this consultation, Mr. Mathew did not have any follow-up with Mr. Kilchenstein regarding the April 27, 2023 accident. *Id.* at 20:17–23, 21:21–22:1.

## II.    DISCUSSION

Pending before the Court are two pretrial motions. First, the United States has moved to exclude testimony regarding the causation and permanency of Mr. Kilchenstein's injuries from Dr. Mathew, Mr. Kilchenstein's treating physician, whom Mr. Kilchenstein intends to offer as a hybrid witness at trial. ECF No. 38 at 1. If the Court were to grant such relief, the United States seeks entry of partial summary judgment on Mr. Kilchenstein's damages claim for lost future earnings. *Id.* at 2. Second, the United States has also moved to exclude the testimony of Dr. Alwahaidy based on Mr. Kilchenstein's asserted failure to timely disclose him as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). ECF No. 39 at 3–4. Each motion is addressed in turn below.

### A.    Dr. Mathew

#### 1.    Admissibility of Opinion Testimony

Under Federal Rule of Evidence 702, a witness may be qualified as an expert based on "knowledge, skill, experience, training, or education." Such an expert may testify "in the form of an opinion or otherwise" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.* As a precursor to admissibility, the trial judge must ensure that expert testimony or evidence is "not only relevant, but reliable." *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). "In performing this gatekeeping role, a district court 'is not intended to serve as

6

a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule.'"  *United States* v. *Smith*, 919 F.3d 825, 835 (4th Cir. 2019) (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No II)*, 892 F.3d 624, 631 (4th Cir. 2018)); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  When sitting as the factfinder, "the Court has increased discretion in how to perform its gatekeeping role."  *Acosta* v. *Vinoskey*, 310 F. Supp. 3d 662, 667 (W.D. Va. 2018).

"[A]n expert's testimony is relevant if it has 'a valid . . . connection to the pertinent inquiry.'"  *Belville* v. *Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (quoting *Daubert*, 509 U.S. at 592).  In other words, the expert testimony or evidence must "'help' the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *see also Maryland Shall Issue, Inc.* v. *Hogan*, Civil Action No. ELH-16-3311, 2021 WL 3172273, at *3 (D. Md. July 27, 2021) ("Helpfulness to the trier of fact is 'the "touchstone"' under Rule 702.") (quoting *Kopf* v. *Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993)).  The expert does not need to "appreciably help," which is "a higher standard than helpfulness" that "is unnecessarily strict."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.  Any "[d]oubt regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility."  *Mack* v. *AmerisourceBergen Drug Corp.*, 671 F. Supp. 2d 706, 709 (D. Md. 2009) (internal quotation marks and citation omitted).

The proponent of the expert must establish admissibility by preponderant evidence.  *Cooper* v. *Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).  Proponents do not, however "have to demonstrate . . . by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate . . . that their opinions are reliable."  Fed.

7

R. Evid. 702, advisory committee's note to 2000 amendment (internal quotation marks and citation omitted). "The evidentiary requirement of reliability is lower than the merits standard of correctness." *Id.*; *see also Reed* v. *MedStar Health, Inc.*, Civil Action No. JKB-20-1984, 2023 WL 5154507, at *10 (D. Md. Aug. 10, 2023) (same).

Contrary to Mr. Kilchenstein's expert disclosure, Dr. Mathew testified at his deposition that he does not have any opinion as to Mr. Kilchenstein's "diagnosis, prognosis, causation of injury, permanency, and fairness and reasonableness of bills and any costs of future medical treatment." ECF No. 38-4 at 22:21–23:5. Instead, Dr. Mathew testified that his trial testimony would be confined to his treatment of Mr. Kilchenstein in connection with the accident, which consisted of three office visits. *Id.* at 22:12–20. As the United States correctly argues, Dr. Mathew cannot testify as to causation or permanency because those topics fall outside the scope of his area of expertise and, with respect to permanency, there is not a factual basis for him to opine that Mr. Kilchenstein's injuries are, in fact, permanent.

Rule 702 requires, among other things, that an expert's testimony be derived from "scientific, technical, or other specialized knowledge" and "based on sufficient facts or data." Fed. R. Civ. P. 702(a)-(b). Based on his deposition testimony, Dr. Mathew does not meet these threshold requirements. As to the cause of Mr. Kilchenstein's neck and back pain, Dr. Mathew testified that:

> [I]t's hard for me to, you know, judge whether it's secondary to the accident or elicited by further injury. That's hard for me to say . . . . [W]hen I saw him on the August visit of '23, he said he was 99 percent better and he was discharged from the case. Now, if the pain recurred, I can't sit here and, you know, hundred percent say it was caused by the accident or it was something that made it worse. I don't know.

ECF No. 38-4 at 36:10–19. When asked if he had an opinion as to whether "a certain portion of the pain the plaintiff is experiencing now [i]s attributable to a car accident and not his prior

existing pain," Dr. Mathew testified, "[t]hat's hard for me to say." *Id.* at 38:11–16; *see also id.* at 38:21–23 ("Now, is it attributable to the pain that he had before, that's difficult to say."). When asked if he had an opinion as to whether "any portion of the pain that he's experiencing is attributable to the car accident," Dr. Mathew replied, "I'm not an expert – I'm not an orthopedic surgeon; I'm just a family practitioner. I can't -- I can't answer that." *Id.* at 39:1–7.

When asked about his opinion as to the permanency of any injuries Mr. Kilchenstein may have suffered as a result of the car accident, Dr. Mathew testified, "I can only go to the permanency of my evaluation of him and the report we got from the physical therapy and his personal statement saying he was 99 percent better. I wouldn't call this a permanent injury." *Id.* at 24:1–5; *see also id.* at 39:19–21 ("[B]ased on when I saw him [i]n August, he had a recovery which was 99 percent. I can't sit here and say it was permanent based on that."), 40:13–14 ("Based on what my assessment was, it wasn't perm[]an[en]t."). Dr. Mathew testified later in his deposition that a determination as to the permanency of Mr. Kilchenstein's injuries would require "further testing," "further studies," and "further evaluation" by another medical professional (physical therapist or orthopedist). *Id.* at 41:3–11.

Dr. Mathew repeatedly testified at his deposition that he does not consider Mr. Kilchenstein's injuries to be permanent. It requires no great inferential leap to conclude that Dr. Mathew cannot testify to the contrary at trial. *E.g.*, *Columbia Gas Transmission LLC* v. *United States*, No. CV 3:14-11854, 2016 WL 503195, at *4 (S.D.W. Va. Feb. 8, 2016) (excluding testimony on an issue that the expert "admitted he did not have a sufficient factual basis" to support the proffered opinion); *Sweeney* v. *SuperValu Inc.*, Civil Action No. CCB-13-1804, 2014 WL 2003103, at *3 (D. Md. May 15, 2014) (declining to consider expert testimony on summary judgment because, among other things, the expert "d[id] not have a sufficient factual basis for his opinions").

Mr. Kilchenstein's efforts to preserve this area of testimony fall short.  In response to questioning by Mr. Kilchenstein's counsel, Dr. Mathew testified at his deposition that he had "some type of rule of thumb" that "if there's [ ] objective proof of injury" and "a condition continues" for "six months to one year," "it's probably a permanent problem" "based on the physical therapy and how they respond."  ECF No. 38-4 at 29:1–20.  Here, however, the medical records and Dr. Mathew's deposition testimony indicate that Mr. Kilchenstein responded very well to physical therapy, which is inconsistent with Dr. Mathew's "some type of rule of thumb" that Mr. Kilchenstein attempts to leverage to support admissibility.  Dr. Mathew conceded that he had not seen a doctor say that Mr. Kilchenstein was "one hundred percent better."  *Id.* at 29:23–25.  But immediately afterwards he clarified that the assessment that Mr. Kilchenstein "was 99 percent better" following the accident came from Mr. Kilchenstein himself.  *Id.* at 30:2–3 ("This was Mr. Kilchenstein's own words.  I did not write that in there, I did not make that number up.").  Dr. Mathew acknowledged that he could "probably" "assume" that if Mr. Kilchenstein was "99 percent better, at least he's had some ongoing problems from the accident."  *Id.* at 30:4–10.  This testimony, however, cannot carry Mr. Kilchenstein's burden of establishing relevance and reliability by preponderant evidence, particularly when coupled with Dr. Mathew's repeated assertions that he did not consider Mr. Kilchenstein's injuries to be permanent in nature.  *See*, *e.g.*, *id.* at 38:19 ("He had an injury and he got better.").  Further casting doubt upon Dr. Mathew's ability to opine on permanency is his testimony that such a conclusion falls outside of his area of expertise and would require further evaluation by another medical professional.  For all of these reasons, Dr. Mathew will not be permitted to testify at trial as to the cause of Mr. Kilchenstein's injuries or that such injuries are permanent in nature.[5]

---

[5]  Dr. Mathew is likewise precluded from opining on the cost of future medical treatment, as this topic also falls outside his area of expertise.  ECF No. 38-4 at 24:12–16 (testifying that any opinion regarding the cost of future medical treatment was "beyond [his] field.").  Dr.

2.    Availability of Lost Future Earnings Damages

The United States contends that exclusion of causation and permanency testimony from Dr. Mathew requires entry of summary judgment in favor of the United States on the lost future earnings component of Mr. Kilchenstein's damages claim.  ECF No. 38 at 14–15.  Based on the existing summary judgment record, the undersigned concurs.

Summary judgment motion practice "is properly regarded . . . as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Federal Rule of Civil Procedure 56 provides that the district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  Thus, to defeat summary judgment, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat. Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968).  On the other hand, summary judgment "is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits,

---

Mathew may, however, offer testimony on whether the medical bills related to the emergency room, physical therapy, and his treatment were fair, reasonable, and related to the car accident in question.  *See id.* at 33:23–34:6.

the court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to judgment as a matter of law." *Sylvia Dev. Corp.* v. *Calvert C'nty, Md.*, 48 F.3d 810, 817 (4th Cir. 1995).

"Rule 56 permits a litigant to move for partial summary judgment, and for the Court to resolve certain issues at summary judgment, rather than the entire case." *Neal* v. *United States*, 599 F. Supp. 3d 270, 287 (D. Md. 2022) (citing Fed. R. Civ. P. 56(a)); *see also* Fed. R. Civ. P. 56, advisory committee's note to 1946 amendment ("The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication . . . serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact.").

The United States Court of Appeals for the Fourth Circuit has cautioned that summary judgment "cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs* v. *N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-569 (4th Cir. 2015) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 2728 (3d ed. 1998)). At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In doing so, the district court "must view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor without weighing the evidence or assessing the witnesses' credibility." *Baynard* v. *Malone*, 268 F.3d 228, 234-235 (4th Cir. 2001). At the same time, "[i]t is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat* v. *Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks and citation omitted); *see also Celotex Corp.*, 477 U.S.

at 323-324 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

In an action brought under a federal court's diversity jurisdiction, the Court is to apply the substantive law of the state in which it sits. *Mathis* v. *Terra Renewal Serv. Inc.*, 69 F.4th 236, 242 (4th Cir. 2023); *Lewis* v. *Waletzky*, 422 Md. 647, 657 (2011). Under Maryland law, expert testimony may be required to establish causation of injuries. As this Court has explained, "[i]n many contexts, including those in which the injuries asserted are medical in nature, expert opinion is critical to establish causation. Indeed, in some circumstances the failure of a plaintiff to offer adequate expert opinion can result in summary judgment for the defendant." *Neal*, 599 F. Supp. 3d at 291. Interpreting Maryland law, the Fourth Circuit has explained:

> Expert testimony is not required . . . if the case falls into one of three categories: (1) if "a disability develops coincidentally with," or within a "reasonable time after," the subject act; or (2) if the proof of causation is "clearly apparent" from the nature and circumstances of the injury; or (3) if "the cause of the injury relates to matters of common experience, knowledge, or observation of laymen."

*Galloway* v. *Horne Concrete Const.*, 524 Fed. Appx. 865, 871 (4th Cir. 2013) (quoting *Wilhelm* v. *State Traffic Safety Comm'n*, 230 Md. 91, 99 (1962)). Applying the *Wilhelm* criteria, the Fourth Circuit held in *Galloway* that "no experts [we]re needed to establish that being rear-ended by an eighteen-wheel tractor-trailer in a multi-vehicle interstate accident can cause lower-back injuries." 524 Fed. Appx. at 871; *see also Neal*, 599 F. Supp. 3d at 270, 292-293 (collecting numerous examples of when an expert was and was not required to establish causation).

On the other hand, expert testimony is required "where the cause of an inj[u]ry claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts (*especially when the symptoms of the injury are purely subjective in nature, or where disability does not develop until some time after*

13

*the negligent act*).” *Wilhelm*, 230 Md. at 100 (emphasis added) (collecting cases). The

Appellate Court of Maryland[6] analyzed *Wilhelm*, surveyed case law, and concluded that:

> the causal relationship will almost always be deemed a complicated medical question and expert medical testimony will almost always be required when one or more of the following circumstances is present: 1) some significant passage of time between the initial injury and the onset of the trauma; 2) the impact of the initial injury on one part of the body and the manifestation of the trauma in some remote part; 3) the absence of any medical testimony; and 4) a more arcane cause-and-effect relationship that is not part of common lay experience.

*S.B. Thomas, Inc.* v. *Thompson*, 114 Md. App. 357, 382 (1997). There is “no hard and fast rule,”

*id.* at 382-383, and a determination of “whether the particular injury asserted requires expert

testimony to establish causation is often a difficult and fact-sensitive undertaking,” *Neal*, 599 F.

Supp. 3d at 291. Nevertheless, it is “clear . . . that when there is a genuine issue as to whether

there is a causal connection between an earlier injury and a subsequent disability, in the majority

of cases it will be a complicated medical question requiring, as a matter of law, expert medical

testimony.” *S.B. Thomas, Inc.*, 114 Md. App. at 383.

Applying this framework to the case at bar, it is evident that no expert would be required

to establish that the pain Mr. Kilchenstein experienced immediately following the motor vehicle

accident was causally connected to the alleged negligence of the USPS employee. As the Fourth

Circuit observed in *Galloway*, such an injury fits into each of the three *Wilhelm* categories of

circumstances when an expert is not required. 524 Fed. Appx. at 871. Mr. Kilchenstein’s lost

future wages damage claim, however, rests on different footing.

---

[6] Effective December 14, 2022, the name of Maryland’s highest court was changed from the “Maryland Court of Appeals” to the “Supreme Court of Maryland,” and the name of Maryland’s intermediate appellate court was changed from “Maryland Court of Special Appeals” to “Appellate Court of Maryland.” *E.g.*, *Middleton* v. *Koushall*, Civil Action No. ELH-20-3536, 2024 WL 1967816, at *21 n.16 (D. Md. May 3, 2024). The undersigned uses the current names in this memorandum opinion.

In his deposition, Mr. Kilchenstein testified that for years he has experienced chronic low back pain, which he described as "discomfort in [his] low back." ECF No. 38-1 at 26:15–18. Mr. Kilchenstein consulted a physician about this back pain sometime prior to 2005. *Id.* at 19–25. Mr. Kilchenstein explained that his back pain was not caused by an injury, but was instead "more of the pop-up variety." *Id.* at 27:1–5.

Mr. Kilchenstein further testified at his deposition that prior to his retirement he had worked for the Internal Revenue Service for 35 years as an information technology specialist. ECF No. 38-1 at 11:23–12:5. Beginning in 2009, Mr. Kilchenstein's position was "fully remote." *Id.* at 12:22–13:1. This meant that Mr. Kilchenstein was able to primarily work from home and travel into the office one day a week. *Id.* at 13:10–21. Mr. Kilchenstein testified that in January or February of 2025, a deferred resignation program was offered, which he did not accept because "[t]here was no mandate to return to the office" and "there was a lot of reluctance about the validity of it." *Id.* at 52:3–21. Mr. Kilchenstein subsequently "start[ed] returning to the office four days a week," and was "told that they were taking away the alternative work schedule and that [he] would have to go in five days a week, losing [his] Fridays off." *Id.* at 53:3–9. Mr. Kilchenstein's commute to the office was "an hour-plus . . . each way." *Id.* at 45:9–10. Mr. Kilchenstein went into the office for four weeks and then "separated" and was on administrative leave through September 30, 2025. *Id.* at 53:10–24.

In his responses to the United States' interrogatories, Mr. Kilchenstein explained that the basis for his lost earnings claim is that he "resigned from his job and took an earlier-than-expected retirement on May 3, 2025, due to being required to return to in-office work five days a week and having to drive past the crash site." ECF No. 38-8 at 3. Mr. Kilchenstein stated that he "made this decision because of the anxiety he now experiences while driving and the discomfort associated with long-distance travel" following the April 27, 2023 motor vehicle

15

accident. *Id.* The passage of time (more than two years), the occurrence of intervening events that affected Mr. Kilchenstein's employment (return-to-work mandate), and Mr. Kilchenstein's pre-existing back pain raise a genuine issue as to whether Mr. Kilchenstein's early retirement—and thus his future lost wages—are, in fact, causally connected to the motor vehicle accident at issue in this case. *S.B. Thomas, Inc.*, 114 Md. App. at 383.

The Appellate Court of Maryland has stated that the question of whether causation is a "complicated medical question" that requires expert testimony "calls for a robust dose of that not-so-common commonsense." *Hunt* v. *Mercy Med. Ctr.*, 121 Md. App. 516, 538 (1998). Commonsense dictates that there could very well be other reasons for Mr. Kilchenstein's decision to retire earlier than expected. Precisely as described in *Wilhelm*, Mr. Kilchenstein's asserted physical and emotional injuries are both "subjective in nature" and did not develop until "some time after the negligent act." 230 Md. at 100. Expert testimony is therefore required to establish that the "anxiety" and "discomfort" that allegedly led to Mr. Kilchenstein's early retirement are causally connected to his negligence claim. *E.g.*, *Johnson* v. *Zerivitz*, 234 Md. 113, 116-118 (expert testimony required to establish that "emotional disturbance" and a leg injury that occurred two-and-a-half years later were causally connected to the motor vehicle accident that formed the basis for the lawsuit); *Hunt*, 121 Md. App. at 539-540 (collecting cases where an expert was required due to, among other things, the passage of time between the original occurrence and subsequent physical ailments); *Osunde* v. *Lewis*, 281 F.R.D. 250, 261 (D. Md. 2012) ("Maryland courts have found that expert testimony is required to establish a causal link between negligent conduct and a remote injury occurring sometime thereafter."). As the Appellate Court of Maryland has explained, "an otherwise simple issue of causation may become a complicated medical matter if under the facts of the case there is a possibility that the symptoms . . . arose from an independent source." *Hunt*, 121 Md. App. at 542.

In opposition to partial summary judgment, Mr. Kilchenstein posits that Dr. Mathew can, indeed, testify as to causation and permanency. ECF No. 41 at 1–5. As set forth previously, *see* II.A.1., *supra*, the undersigned has reached the opposite conclusion. Mr. Kilchenstein's alternative argument that material issues of disputed fact preclude summary judgment essentially rehashes his assertions regarding the permissible scope of Dr. Mathew's testimony at trial. *Id.* at 5. Mr. Kilchenstein cites only to excerpts of Dr. Mathew's deposition, which he believes support permanency. *Id.* Nowhere does Mr. Kilchenstein address the causation element of his lost-future-wages damage claim, which he has the burden of proving at trial. *Strong* v. *Prince George's Cnty.*, 77 Md. App. 177, 183 (1988) ("It is beyond cavil . . . that in a negligence action, the plaintiff has the burden of proving, by a preponderance of the evidence that his damages were caused by the negligence of the defendant."). Importantly, Mr. Kilchenstein does not identify any expert testimony that establishes that the "anxiety" and "discomfort" he experienced two years later when he was forced to commute more than two hours a day instead of working remotely was causally connected to the motor vehicle accident.

The United States, as "movant[,] may show that it is entitled to summary judgment by . . . 'pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case.'" *Neal*, 599 F. Supp. 3d at 286 (quoting *Celotex Corp.*, 477 U.S. at 325). This is precisely what the United States has done here. ECF No. 38 at 14–15. To survive summary judgment on this aspect of his damages claim, Mr. Kilchenstein "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 522 (alteration in original) (quoting Fed. R. Civ. P. 56(e)). "Furthermore, neither '[u]nsupported speculation[ ]' nor evidence that is 'merely colorable' or 'not significantly probative[ ]' will suffice to defeat a motion for summary judgment." *Id.* (first alteration in original) (internal citations omitted).

17

Instead, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Summary judgment will therefore be entered in favor of the United States on the lost future wages aspect of Mr. Kilchenstein's damages claim.

### B.    Dr. Alwahaidy

The United States moves to exclude the testimony of Dr. Alwahaidy on the grounds that Mr. Kilchenstein failed to comply with Federal Rule of Civil Procedure 26(a)(2), which governs the disclosure of expert witnesses. ECF No. 39. Mr. Kilchenstein acknowledges that he did not timely disclose Dr. Alwahaidy as an expert witness, but argues that the disclosure was made "as soon as possible" and that Dr. Alwahaidy's "testimony must be permitted to better assist the factfinder in understanding the complexities of Mr. Kilchenstein's injuries." ECF No. 40 at 1.

Rule 26(a)(2)(A) requires that each party disclose expert witnesses it may call to testify at trial. Fed. R. Civ. P. 26(a)(2)(A). Subsections (B) and (C), in turn, identify what each party must disclose. If an expert witness is "retained or specially employed to provide expert testimony," the expert "disclosure must be accompanied by a written report--prepared and signed by the witness--" that outlines, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i); *see also* Fed. R. Civ. P. 26(a)(2)(B)(ii)-(vi) (outlining the other required disclosures for a retained expert). When calling an expert witness who is not "retained or specifically employed to provide expert testimony," a party must nevertheless identify "the subject matter on which the witness is expected to present evidence . . . and . . . a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). This Court's Local Rule 104-

18

10 clarifies that hybrid fact/expert witnesses, such as treating physicians, are subject to the disclosure requirements of Rule 26(a)(2)(A) and (C).

It is evident that with respect to Dr. Alwahaidy, Mr. Kilchenstein has not complied with this Court's Scheduling Order or the disclosure requirements set forth in the Federal and Local Rules. On February 20, 2025, the Court entered a Scheduling Order that set July 6, 2025, as the deadline for Mr. Kilchenstein's Rule 26(a)(2) expert witness disclosures, and September 24, 2025, as the deadline for Mr. Kilchenstein's supplemental expert witness disclosures. ECF No. 17. Mr. Kilchenstein did not identify Dr. Alwahaidy in his June 30, 2025 Rule 26(a)(2) expert witness disclosures. ECF No. 38-9. Indeed, Mr. Kilchenstein did not identify Dr. Alwahaidy until February 5, 2026 (ECF No. 39-4), which was after discovery had closed, a trial date had been set, and the United States had indicated its intention to move to exclude another expert (Dr. Mathew) (ECF Nos. 17; 32–34). To the extent that Dr. Alwahaidy can be considered a treating physician, Mr. Kilchenstein has not complied with Rule 26(a)(2)(C)'s disclosure requirements. His threadbare, boilerplate list of general areas of anticipated testimony—which are identical for each of his identified expert witnesses—is insufficient. ECF Nos. 38-9; 39-4; *Lins* v. *United States*, Civil Action No. ELH-17-2163, 2024 WL 1604494, at \*23 (D. Md. Apr. 12, 2024) (Rule 26(a)(2)(C) requires "more than mere identification of an individual" and "'vague generalizations' as to the subject matter of the opinions of the witness") (quoting *Keralink Int'l, Inc.* v. *Stradis Healthcare, LLC*, Civil Action No. CCB-18-2013, 2021 WL 1198150, at \*2 (D. Md. Mar. 30, 2021)). Moreover, Mr. Kilchenstein indicated in his opposition to the instant motion that he has not yet had the opportunity to consult with Dr. Alwahaidy. ECF No. 40 at 2 ("Mr. Kilchenstein has attempted to schedule, on numerous occasions, treatment with Dr. Alwahaidy but these appointments have been cancelled and/or rescheduled."). This suggests that Dr. Alwahaidy is not, in fact, a treating physician, but rather an expert who has been retained

19

or specifically employed to provide expert testimony, thus triggering the heightened disclosure requirements of Rule 26(a)(2)(B).

Federal Rule of Civil Procedure 37(c), which governs, among other things, the failure to disclose an expert pursuant to Rule 26(a)(2), "gives teeth" to the Rule 26(a)(2) disclosure requirements. *E.g.*, *Perkins* v. *Sandy Spring Builders, LLC*, Civil Action No. DKC 23-1823, 2026 WL 696538, at *17 (D. Md. Mar. 12, 2026); *Ace Am. Ins. Co.* v. *McDonald's Corp.*, Civil Action No. GLR-11-3150, 2012 WL 2523883, at *2 (D. Md. June 28, 2012). In pertinent part, this rule provides that when "a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Bresler* v. *Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

"The Fourth Circuit has emphasized that Rule 37(c)(1) imposes an automatic sanction of exclusion, and that the general rule is that evidence that a party has failed to properly disclose should be excluded." *Lins*, 2024 WL 1604494, at *24 (internal quotation marks and citations omitted). "This is because '[a] party that fails to provide [Rule 26] disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case.'" *Id.* (alterations in original) (quoting *Saudi* v. *Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005)). Ultimately, the determination of whether the failure to disclose was substantially justified or is harmless is guided by five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack And Fixture, Inc.* v. *Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). "The first four factors . . . relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." *Bresler*, 855 F.3d at 190.

On balance, these factors counsel in favor of exclusion. The United States' uncontested assertions establish that Dr. Alwahaidy was not identified as a treating physician or an expert witness in Mr. Kilchenstein's administrative claim, answers to interrogatories, deposition, or expert witness disclosures. ECF Nos. 38-1; 38-9; 39-1; 39-2 at 5. It was not until after a trial date was set and the United States noticed its intention to move to exclude the testimony of Dr. Mathew that Mr. Kilchenstein identified Dr. Alwahaidy as an expert. ECF Nos. 32–34; 39-4. What is more, the United States represents that it has not received an expert report or even any medical records pertaining to Dr. Alwahaidy's treatment or examination of Mr. Kilchenstein. ECF No. 39 at 5. At this juncture in the case, the surprise presented by Mr. Kilchenstein's belated and inadequate expert disclosure cannot readily be cured. Discovery concluded more than five months ago. ECF No. 17. Trial is set to begin on May 19, 2026. ECF No. 33 at 1. Given the lack of adequate substantive disclosure Rule 26(a)(2) requires, the United States—and the Court—is left to guess as to what Dr. Alwahaidy's proposed testimony might encompass. Nevertheless, the fact that he is a neurologist suggests that Dr. Alwahaidy's testimony will introduce topics that have not been previously identified in this litigation. The importance of this evidence is unknown because Mr. Kilchenstein has yet to consult with Dr. Alwahaidy. Finally, the only explanation for the failure to disclose is that Mr. Kilchenstein was unable to secure an appointment with Dr. Alwahaidy.

To permit Mr. Kilchenstein to call Dr. Alwahaidy at trial would only serve to accomplish what Rules 26(a)(2) and 37(c)(1) were designed to prevent. It would unfairly inhibit the United

States' ability to prepare for trial, unnecessarily prolong litigation, and undermine the Court's management of the case. *Lins*, 2024 WL 1604494, at *24; *Ace Am. Ins. Co.*, 2012 WL 2523883, at *3. Dr. Alwahaidy will not be permitted to testify at trial.

## III.   CONCLUSION

For the foregoing reasons, the United States' motions to exclude expert testimony and for partial summary judgment (ECF Nos. 38–39) are granted. A separate Order follows.


Date:  March 30, 2026                           _____/s/_____
                                                 Erin Aslan
                                                 United States Magistrate Judge